UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEROME HART, and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BANK OF AMERICA HOME LOANS, INC.<br>f/k/a COUNTRYWIDE HOME LOANS, INC.<br>COUNTRYWIDE BANK, N.A.<br>d/b/a America's Wholesale Lender,<br><br>        Defendant. | CASE NO. 09-cv-11096-RWZ |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

This putative class action arises out of a residential mortgage refinance loan taken by plaintiff Jerome Hart in December 2005.  The loan is a so-called "payment option" or "pick a payment" loan – a loan where the borrower has the *option* in the early years of choosing how much he wants to repay each month.  All of these options, and the ramification of each, were fully disclosed to Hart, and he signed numerous documents evidencing these facts and that he understood them.  Tellingly, despite a complaint that at its core alleges that the features of the loan were not properly disclosed and understood by borrowers, and despite pages of hyperbole in the complaint about the alleged evils of pay option loans, Hart never once asserts (1) that he did not know he was entering into a pay option transaction; (2) that he did not understand that the level of minimum payments he chose to make could result in negative amortization of his loan; or (3) that no one told him about the risk of negative amortization if he made that choice.

Instead, the complaint alleges that the loan terms were "too complex" for the "average customer" to understand and were inherently "unfair" since Countrywide "should have known" that Hart could not afford the loan after he chose to make only minimum payments.  In other words, Hart essentially asserts that the documents provided by Countrywide that explained the loan terms were inadequate.  He also impliedly asserts that Countrywide had an obligation to anticipate that Hart would (1) choose to make the minimum payments and ignore the written warnings that doing so would result in negative amortization; and (2) that as a result he would not be able to afford his later payments.  Presumably, Countrywide was also obligated to anticipate that Hart would not take the extra $40,000 in cash he was given from the loan and save some of it or apply some of it to the obligations he was undertaking but not paying on a current basis.

Under these circumstances, it is not surprising that Hart's complaint that he was deceived and taken advantage of is founded in part on novel causes of action, such as "Negligent or Improper Underwriting" and " Illegal Contract Terms," and that the case is subject to dismissal.

Hart's first cause of action, under Mass. Gen. L. c. 93A ("Chapter 93A"), based on allegations that the information provided to him about his loan was deceptive or otherwise faulty, is preempted by the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 – 1667, the federal statute governing loan disclosures.  State law claims that are inconsistent with TILA's comprehensive remedial scheme cannot survive as a matter of law.  *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1007 n. 3 (9th Cir. 2008).  What remains of that cause of action, vague allegations ripped from media headlines that these types of loans are "structurally unfair" and the like, are not connected in any way to Hart, and so do not state a claim for relief under the modern

2

standards of pleading. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556-562 (2007); *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct 1937, 1949 (2009).

Hart's "Negligent Underwriting" claim (Count II) is not a cognizable cause of action under Massachusetts law.  And to the extent plaintiff asserts a straightforward negligence claim against Countrywide, he does not allege facts establishing that Countrywide owed Plaintiff a duty of care giving rise to tort liability.  Indeed, Massachusetts law is clear that absent special circumstances, not alleged here, a lender does not owe a duty of care to borrowers.

Counts III and IV attempt to state a claim for "Unconscionability and/or Illegality" and "Illegal Contract Terms," but these principles are not a claim for relief but instead are, at most, defenses to a contract enforcement suit.  Even if one could sue for "unconscionability" or "illegality," this lawsuit once again fails the basic pleading requirement under *Twombly* and *Iqbal*.  Plaintiff has failed to allege facts or circumstances surrounding the origination of this loan that support the allegation that it was unconscionable, illegal, or unfair at the time it was made and that Hart should not be held to the obligations he undertook.  Among other defects, Hart never mentions that the allegedly unconscionable loan paid $443,000 on his behalf to other creditors, and provided him with more than $39,000 in cash from the loan proceeds, and never offers to return this money.  The unjust enrichment claim (Count V) fails because the parties' relationship was governed by an express contract, and the declaratory judgment claim (Count VI) fails because there is no independent cause of action under the Declaratory Judgment Act and, regardless, this claim is merely duplicative of Hart's other claims.

In the unlikely event any of Hart's individual claims survive, the Court ought to address issues related to the parties Hart has sued.  Hart's claims against "Bank of America Home Loans, Inc." and Countrywide Bank, N.A. fail because Hart's own documents demonstrate that he

3

contracted only with a third defendant, Countrywide Home Loans, Inc. (through a d/b/a of that company, America's Wholesale Lender). Hart fails to state a claim against companies which did not make his loan.

## BACKGROUND

Hart bought a multi-family residence from his parents in 2001. First Amended Class Action Complaint ("Complaint" or "FAC") ¶ 21. The Complaint provides no details about the amount of Hart's original loan, its terms, the mortgage broker and lender who provided him with the loan, or any subsequent refinancings or modifications with his original lender. In December 2005, for reasons he does not disclose, Hart refinanced his mortgage with Countrywide,[1] using a third party mortgage broker, Amerihome Mortgage, to do so. FAC ¶ 22; HUD-1 Settlement Statement, attached to the Declaration of Elianna J. Nuzum ("Nuzum Decl."), submitted herewith, as Ex. A.[2] Hart provides no details about his relationship with his mortgage broker, or what the broker told him about the terms of his loan. Hart also neglects to mention that his loan with Countrywide allowed him to pay off $442,964 in prior mortgage, car loan and credit card debt, and provided $39,439 in cash directly to him. Nuzum Decl. Ex. A.

Although there are no allegations about what Hart's mortgage broker told him about the loan, Hart attaches the Adjustable Rate Note ("Note") that he received from Countrywide as

---

[1] Plaintiff lists "Bank of America Home Loans, Inc.," Countrywide Home Loans, Inc., and Countrywide Bank, N.A. as a single defendant that he claims formerly did business as America's Wholesale Lender. As described below, however, Plaintiff's lender was, in fact, Countrywide Home Loans, Inc. "Bank of America Home Loans, Inc." does not exist as such, and is thus improperly named. For purposes of the Motion to Dismiss and this Memorandum in Support, all "entities" are together referred to as "Defendants." Defendants refer to America's Wholesale Lender and Countrywide Home Loans, Inc., collectively as "Countrywide."

[2] In considering this Motion, the Court may consider all of the documents comprising Hart's 2005 loan agreement without converting the instant Motion to one for summary judgment, as Hart referenced the loan agreement throughout his Complaint, attached portions of the agreement thereto, and the loan agreement forms the basis of his claims. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

4

Exhibit 1 to the Complaint, evidencing that Countrywide disclosed the very loan features about which he now complains. *Compare* Note ¶¶ 2-3 *with* FAC ¶ 23. The Note is entitled "ADJUSTABLE RATE NOTE" and contains, in its very first paragraph, an express disclosure, in bold-faced, all capital letter text, that "**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT**." FAC Ex. 1 (emphasis in original). Paragraph 2 of the Note then contains the loan terms relating to "Interest." *Id*., ¶ 2. In Paragraph 2(A), the Note discloses (1) the yearly "Interest Rate" the borrower will pay "until the full amount of Principal has been paid," and (2) that the disclosed interest rate is subject to change. *Id.*,¶ 2(A). And, in Paragraphs 2(B)-(D), the Note discloses the adjustable rate features of Hart's Loan, including that the interest rate set forth in Paragraph 2(A) is subject to change monthly starting in the second month of the loan. *Id.*¶ 2(B)-(D).

Hart's main allegation -- that negative amortization was not disclosed -- is belied by the Note. Hart appears to complain that the Note does not sufficiently disclose the possibility of negative amortization if he followed the payment schedule in the disclosures. FAC ¶¶ 23, 86(n), (o). But whether negative amortization occurs depends on the payment option selected by Hart. As the Note expressly discloses, negative amortization will occur only if Hart elects to pay the minimum payment, as opposed to the interest only or 15- or 30-year amortizing payment. Thus, at the inception of the Loan, Countrywide accurately disclosed the possibility of negative amortization.

Indeed, the Note contains a host of express disclosures about negative amortization. For example, in its very first paragraph, the Note contains an express disclosure, in bold-faced, all capital letter text, that "**THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED**. . . ." FAC Ex. 1 (emphasis in

5

original). This is an express disclosure of negative amortization and of potential increases to the principal loan balance.

Similarly, Paragraph 3(C) of the Note also discloses that, "[i]f the Minimum Payment is not sufficient to cover the interest due[,] then negative amortization *will occur*" – the precise situation Hart complains of. *Id.*, ¶ 3(C) (emphasis added).

There is also a provision in the Note entitled, "Additions to My Unpaid Principal," which discloses exactly what happens when the borrower makes the minimum payment, including that the principal amount of the loan will increase:

> …my Minimum Payment could be less than … the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date …. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and **will add the difference to my unpaid Principal**…

*Id.*, ¶ 3(E) (emphasis added).

The negative amortization features were also fully disclosed in the Program Disclosure Countrywide provided to Hart.[3] The Program Disclosure, which was signed by Hart, expressly provides, in a series of boxes, among other things, when the interest rate changes, what happens when it does, and how the Minimum Payment can change. As to what happens when the Minimum Payment is less than the Interest Only Payment, which goes to the allegations at the very heart of the Complaint, the Program Disclosure provides:

- Your monthly Minimum Payment will not be enough to cover the interest due.
- The interest due, but not covered by your Minimum Payment, will be added to the amount you owe on your loan.
- **Your principal balance will increase, which is known as "negative amortization" or "deferred interest."**

Program Disclosure, Nuzum Decl. Ex. B, at 2 (emphasis in original).

LIBA/2030339.8

Similarly, the Loan Modification Agreements that Hart entered into in December 2007 and March 2009 ("2007 Modification" and "2009 Modification," respectively), attached to the Complaint as Exhibits 2 and 3 respectively, disclose that the new principal balance includes "any interest capitalized to date." FAC Ex. 2, 2007 Modification at ¶ 1; *see also* FAC Ex. 3, 2009 Modification at ¶ 1. The 2009 Modification also states that "your monthly payment will increase significantly when the Interest-only period expires, and you are to make principal and interest payments for the remaining term of the loan. . . We encourage you to remit more than the interest-only payment when possible to reduce the impact of the Agreement on your future monthly payments." FAC Ex. 3 at 1; FAC ¶ 65.

## **STANDARD**

A Complaint must be dismissed where the plaintiff cannot allege any set of facts to support his plausible entitlement to relief. *Iqbal*, 129 S. Ct. at 1949. Hart's entitlement to relief "requires more than labels and conclusions"; his "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A Complaint must "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct at 1949. To state a claim that is sufficiently plausible to survive a motion to dismiss, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Even construing the Complaint in the light most favorable to Hart and taking its factual allegations as true, Hart has failed to state a claim for which relief may be granted.

---

[3] Pay Option Adjustable Rate Mortgage Loan Disclosure, dated December 5, 2005 ("Program Disclosure") (copy attached to Nuzum Decl. as Exhibit B).

**ARGUMENT**

**I.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER CHAPTER 93A.**

None of the Complaint's allegations are sufficient to state a claim under Chapter 93A. Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." G.L. c. 93A, § 2. In Count I of the Complaint, Hart lists the acts and practices that he claims are "unfair, deceptive, and/or unconscionable" under Chapter 93A. FAC ¶¶ 85-86. Although listed separately, the allegations reduce to five categories of allegedly unfair or deceptive acts: (1) "confusing" or "deceptive" disclosure of information, FAC ¶¶ 86(b)-(g), (i), (n)-(o); (2) "incentivizing" third party loan brokers to make "unfair" loans, FAC ¶¶ 86(h); (3) making loans that borrowers could not afford, FAC ¶¶ 86 (k)-(m); (4) offering loan modifications that allow the lender to retain some of the benefits of the original loan, FAC ¶¶ 86(p), (q); and (5) conclusory allegations that the loans were unfair, deceptive or unconscionable, FAC ¶¶ 86(a), (j), (r)-(u). None of these allegations may be the basis for a Chapter 93A claim.

**A.    "Confusing" or "Deceptive" Disclosure of Information.**

Hart's Chapter 93A claim regarding allegedly "confusing" or "deceptive" loan terms and disclosures must be dismissed because it is preempted by the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667. Indeed, the bulk of Hart's Chapter 93A assertions are directed toward an alleged lack of clear disclosure about the nature of Hart's pay option loan and the potential for negative amortization. FAC ¶ 86 (b)-(g); (j), (n-o). TILA preempts such claims, however, and thus they cannot provide the basis for a Chapter 93A claim.

TILA provides significant, uniform federal regulation in the area of consumer credit disclosures. TILA's provisions provide for remedies that carefully balance the rights and interests of consumers and creditors – chiefly, actual damages and statutory damages for certain types of violations, a class action cap of $500,000, loan rescission on an individual basis for a

more limited range of disclosure violations, a 1-year limitations period for civil damages, a 3-year limitations period for rescission, and a complex web of safe harbors and exceptions.  15 U.S.C. §§ 1603, 1604(b), (f) & (g), 1605(f), 1606(c) & (e), 1631(d), 1633, 1635, and 1640.  TILA also sets forth the information lenders must provide in their loan disclosures.  *See* 12 C.F.R. §§ 226.17-226.19.  It is well-settled that TILA strikes a balance in these provisions that was carefully constructed as an integral part of the entire statutory scheme.  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980) (recognizing the need for "meaningful disclosures" under TILA as opposed to "more disclosures" to avoid information overload by consumers); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1337 (11th Cir. 2000).

      Hart's Chapter 93A allegations challenging the sufficiency of information provided about the nature of his pay option loan attempts to assert a Chapter 93A claim in place of TILA claims, in an apparent attempt to expand and distort the federal statute's closely-drawn remedial scheme.  In particular, Hart's challenge to the sufficiency of disclosures by Countrywide under state law effectively seeks to increase the applicable limitations period (from one year for TILA damages, to four years for Chapter 93A), and presumably to increase available types of relief (from actual and statutory damages, the latter capped at $500,000 in a class action, to an uncapped amount of treble damages under Chapter 93A).  *Compare* 15 U.S.C. § 1640 *with* M.G.L. c. 93A, § 3A; M.G.L. c. 260, § 5A.

      These attempts by Hart are inconsistent with TILA and thus preempted.  *See* 15 U.S.C. § 1610(a)(1); *Silvas*, 514 F.3d at 1007 n. 3 (TILA "preempts [the] field" related to loan disclosures); *Silvas v. E*Trade Mortgage Corp.*, 421 F. Supp. 2d 1315, 1320 (S.D. Cal. 2006), *aff'd*, 514 F.3d 1001 (9th Cir. 2008) (attempt to use California's unfair competition law to expand TILA limitations period and remedies is preempted); *Nava v. VirtualBank*, No. 08-CV-

9

00069-FCD-KJM, 2008 WL 2873406, at *8 (E.D. Cal. Jul. 16, 2008) (dismissing state law claims for disclosure violations as "attempt[s] to alter" the limitations period and remedies available under TILA); *Paek v. Plaza Home Mortgage, Inc.*, No. CV 09-1729 CAS (CTx), 2009 WL 1668576, at *3 (C.D. Cal. June 15, 2009) (same); *Bigverdi v. Countrywide Bank, FSB*, No. CV 07-3454 AHS (FMOx), slip op. at 1-2 (C.D. Cal. Mar. 26, 2009) ("*Bigverdi II*") (dismissing fraudulent omissions claim challenging mortgage loan disclosures as preempted by TILA); *Bigverdi v. Countrywide Bank, FSB*, No. CV 07-3454 AHS (FMOx), slip op. at 1-2 (C.D. Cal. Jan. 8, 2008) ("*Bigverdi I*") (dismissing California unfair competition law claim challenging mortgage loan disclosures as preempted by TILA).[4]

Hart's damages claim regarding alleged inadequate disclosures expired under TILA in December 2006. It cannot be revived three years later by dressing it up as a Chapter 93A claim. *Silvas*, 514 F.3d at 1007, n.3 (an attempt to go outside TILA's limitations period is an attempt to enforce a state regulation in an area expressly preempted by federal law); *Nava*, 2008 WL 2873406 at *8; *Paeck*, 2009 WL 1668576 at *3.

Similarly, to the extent Hart's 93A claim attempts to impose disclosure obligations on Defendants that are inconsistent with TILA, they are preempted. TILA contains a host of specific disclosure requirements. *See* 12 C.F.R. §§ 226.17-226.19. Any attempt to use state law, either statutory or common, to require a lender to provide disclosures inconsistent with TILA's closely-written disclosure scheme is improper. *See Nava*, 2008 WL 2873406 at *7 (TILA preempts "the entire field" of loan disclosures); *Silvas*, 514 F.3d at 1007, n.3; *Bigverdi II*, *supra*,

---

[4] Judge Stotler's *Bigverdi* decisions are attached to the Nuzum Declaration as Exhibits C and D. They expressly incorporate the arguments advanced in defendants' briefs in that case, including the TILA preemption arguments. Defendants will gladly supply those briefs to the Court should the Court so desire.

slip op. at 1-2; *Bigverdi I*, *supra*, slip op. at 1-2.[5]  Here, Hart challenges the terms disclosed as "incomprehensible" (FAC ¶ 86 (b), (f)), "obscur[ing] the true nature of the terms" (*id*. ¶ 86(d)), and "failing to provide essential information" (*id*. ¶ 86(e)).  TILA, not state law, governs the content of the disclosures that a lender is required to make, and sets forth what disclosures are required in what documents and what the content of the required disclosures must be.  *See, e.g.*, 12 C.F.R. § 226.19; *Silvas*; *Nava*.  As noted in detail in the Background section above, Countrywide disclosed the "pay option" and negative amortization features of his loan in detail.  Hart does not allege that Countrywide's disclosures violate TILA's requirements, and his attempt to impose additional or different disclosure requirements on Countrywide -- and gain additional damages remedies and a longer limitations period -- is inconsistent with TILA and thus preempted.  *Id.*; *see also Carroll v. Homecomings Fin. LLC*, CV 07-3775 AHS (FMOx), slip op. at 3 (C.D. Cal. Mar. 23, 2009) (dismissing nearly identical claims predicated on non-disclosure of the "certainty" of negative amortization) (attached to Nuzum Decl. as Ex. E).

   **B.**  **Incentivizing Loan Brokers to Make Unfair Loans.**

Hart makes the general allegation that Countrywide "[p]rovid[es] compensation to loan brokers, loan officers, underwriters and others designed to incentivize them to make and/or approve the loan on unfair and deceptive terms." FAC ¶ 86(h).  However, Hart makes no *factual* allegations that any such "incentives" to make "unfair and deceptive" loans were present in his loan transaction.  Indeed, the Complaint is entirely silent about the role of the third party mortgage broker who Hart used to arrange his refinancing.  Plaintiff's bald assertions with no specific factual allegations fail to state a claim, under *Twombly* and *Iqbal*.

---

[5] The Massachusetts equivalent to TILA is the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA").  *See Lynch v. Signal Fin. Co.*, 367 Mass. 503, 505 (Mass. 1975); *see also McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007).  The MCCCDA directs that compliance with

11

### C. Making Loans That Borrowers Choosing Minimum Payments Could Not Afford.

Hart makes several allegations which, at bottom, assert that Countrywide made loans that borrowers could not afford. *See* FAC ¶ 86(k) ("Making loans secured by borrowers' principal residences that Countrywide knew or should have known could not be paid by borrowers over the long-term from their income and/or other liquid assets"); FAC ¶ 86(l) ("Making loans secured by borrowers' principal residences when Countrywide knew or should have known that borrowers could not make anticipated scheduled payments"); FAC ¶ 86(m) ("Making loans to borrowers that Countrywide knew or should have known would result in default, delinquency, forced sale, and/or foreclosure"); FAC ¶ 86(q) ("Restructuring loans in a manner that would lead to further problems with affordability for borrowers as well as fees and profitable capitalized interest").

These allegations cannot be the basis for a Chapter 93A claim. Although Hart claims that the loans "were deliberately designed to deprive Mr. Hart and other POA borrowers of a long-term plan to amortize his debt, leaving only . . . expensive and undesirable choices," FAC ¶ 40, Hart admits that the loan at issue was a "pick-a-payment" loan – that is to say, *Hart* had the choice as to whether to make a payment that would amortize the loan, or, at least for a time, to make lower payments that would not, *see* FAC ¶ 13, and the extensive disclosures discussed above confirm as much. Furthermore, Hart admits that at least some of the documentation Countrywide provided "encouraged Mr. Hart to make larger payments 'to reduce the impact of the Agreement on your future monthly payments. . . .'" FAC ¶ 65. Thus, far from depriving Hart of a plan to amortize his debt, Countrywide *suggested* a plan to amortize his debt (i.e.,

---

TILA or Regulation Z, that does not conflict with the MCCCDA, shall be deemed compliance with the MCCCDA. 209 CMR 32.27.

higher payments), which he chose not to follow.  Thus, the allegation that Countrywide made a loan that Hart could not afford fails to state a claim under G.L. c. 93A.

      **D.**      **Offering Loan Modifications That Allow the Lender to Retain Some of the Original Benefits of the Loan.**

Hart also vaguely challenges Countrywide's loan servicing practices, alleging that Countrywide unfairly capitalizes interest when it modifies borrowers' loans.  *See* FAC ¶ 86(p) ("Offering refinancing and restructuring opportunities to borrowers designed to capitalize interest then due in order to obtain payments of compound interest"); FAC ¶ 86(q) ("Restructuring loans in a manner that would lead to further problems with affordability for borrowers as well as fees and profitable capitalized interest").  However, Hart's own choices to pay the minimum due rather than a larger sum put him into the position of needing to seek a modification, as he admits.  *See* FAC ¶¶ 28, 44-45.  Hart does not allege nor could he, that Countrywide had an obligation to modify his loan.  Indeed, he admits that Countrywide did so only in response to his request.  FAC ¶ 45.  In modifying the loan, Countrywide had every right to structure it in such a way that it retained some of the original benefits of the loan.  That is, given that Hart chose to make minimal payments, Countrywide was permitted to capitalize the interest that Hart had not yet paid.  Indeed, Hart's own allegations confirm that the capitalization of interest was disclosed to and agreed upon by him.  FAC ¶¶ 48-49, 58, 62, 67; FAC Exs. 2-3.  Thus, these allegations fail to state a claim under c. 93A.

      **E.**      **Conclusory Allegations That Loans Were Unfair, Deceptive, Unconscionable, or Illegal.**

Hart makes several conclusory allegations that the loans were "unfair," and that therefore Countrywide violated Chapter 93A.  *See* FAC ¶ 86(a) ("Making loans which included unfair, deceptive, and/or unconscionable terms . . ."); ¶ 86(j) ("Acting in a manner that is

13

unconscionable, including without limitation, imposing unconscionable terms, particularly in light of Countrywide's superior knowledge . . ."); ¶ 86(r) ("Making loans that are structurally unfair"); FAC ¶ 86(s) ("Offering and accepting loan modification agreements that Countrywide knew or should have known resulted from duress"); ¶ 86(t) ("Failing to act in compliance with Massachusetts law"); and ¶ 86(u) ("Failing to act in good faith or to deal fairly with borrowers"). These allegations merely parrot the language of the cause of action, but provide no factual allegations in support. As such, they fail to state a claim under *Twombly* and *Iqbal*.

**II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR "NEGLIGENT OR IMPROPER UNDERWRITING" IN COUNT II.**

Hart's claim for "negligent underwriting" must be dismissed for failure to state a claim for at least two reasons. First, there is no such thing as a cause of action under Massachusetts law for "negligent underwriting." *See FDIC v. Fordham (In re Fordham)*, 130 B.R. 632, 648 (Bankr. D. Mass. 1991).

Second, to the extent plaintiff is seeking to assert a claim for common law negligence, that effort fails because Hart has failed to plead facts which would impose a duty of care by Countrywide to Hart, an essential element of any negligence claim. *E.g.*, *Glidden v. Maglio*, 430 Mass. 694, 696 (2000). Under Massachusetts law, unless the loan agreement "create[s] [a] relationship which would impose a duty upon the lender independent of its contractual obligation," a lender generally does not owe a duty of care to a borrower. *Blais v. Warren Five Cents Sav. Bank*, No. 9218, 1993 WL 488429, at *2 (Mass. App. Div. Nov. 22, 1993); *In re Fordham*, 130 B.R. at 646 (no duty of reasonable care owed to borrower by lender); *Pimental v. Wachovia Mortgage Corp.*, 411 F. Supp. 2d 32, 39-40 (D. Mass. 2006) (dismissing borrower's negligence claim against lender where no duty of care owed). Hart has not alleged any facts suggesting that Countrywide owed him a special duty of care. Hart's bald assertion that

14

Countrywide "owed Mr. Hart and other similarly situated borrowers a duty of care to underwrite the loan by considering whether the loan could be paid off by amortized payments," FAC ¶ 91, is a legal conclusion, not a factual allegation. It is thus insufficient to support a claim for relief. *Twombly,* 550 U.S. at 555 (mere "labels," "conclusions," or "formulaic recitation of the elements of a cause of action" will not suffice to withstand a motion to dismiss); *see also Iqbal*, 129 S. Ct. at 1950 (allegations which are "no more than conclusions, are not entitled to the assumption of truth").

Hart's "negligent underwriting" claim really appears to be an attempt to read regulatory guidance out of context. Hart claims that "Countrywide's underwriting of his loan was in violation of 209 C.M.R. § 53.05." FAC ¶ 92. Section 50 provides guidelines in determining whether a refinance loan is in the "borrower's interests" for purposes of interpreting G.L. c. 183, §28C. Hart does not assert a claim under G.L. c. 183, however. This omission is no doubt by design, given that Hart clearly received substantial benefit from his loan, including paying off nearly $450,000 in debts to other creditors, receiving almost $40,000 in cash, obtaining reduced payments for the early part of his loan, and the like. That is, §28C's benefit of the borrower factors indicate a tangible benefit to Hart from the loan. 209 CMR § 53.05, which does nothing more than require lenders to use sound underwriting practices in determining the "borrower's interest" requirement under §28C, cannot be the basis for a separate cause of action – it is merely a factor courts use in evaluating a claim plaintiff chose not to pursue. In any event, Hart merely states a legal conclusion – that Countrywide's underwriting "was in violation" – without any factual allegations about how Countrywide supposedly failed to comply with the undefined standards of Section 53.

15

III. **HART HAS FAILED TO STATE A CLAIM FOR "UNCONSCIONABILITY AND/OR ILLEGALITY" AND "ILLEGAL CONTRACT TERMS" IN COUNTS III AND IV AS A MATTER OF LAW.**

Hart's "Unconscionability and/or Illegality" (Count III) and "Illegal Contract Terms" (Count IV) counts must be dismissed. As an initial matter, Counts III and IV are not causes of action at all. Rather, 'unconscionability' and 'illegality' are affirmative defenses to breach of contract claims, and damages are not available as a remedy. *Doe v. Sexsearch.com,* 551 F.3d 412, 419-20 (6th Cir. 2008); *Johnson v. Long Beach Mortg. Loan Trust*, 451 F. Supp.2d 16, 36 (D.D.C. 2006). As the Supreme Judicial Court summarized, the unconscionability doctrine provides that "If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement." *Waters v. Min Ltd.,* 412 Mass. 64, 68 (1992). When these claims are raised affirmatively, they are raised as grounds for rescission of the contract, *see, e.g., id.* at 65, which appears to be Plaintiff's aim here. However rescission is not available in the class action context. *See McKenna v. First Horizon Home Loan Corp.,* 475 F.3d 418 (1st Cir. 2007).

Even assuming Hart could state a claim for "unconscionability" or "illegality," he has failed to do so here. To state a claim for unconscionability, a plaintiff must allege *both* procedural and substantive unconscionability. *Zapatha v. Dairy Mart, Inc.,* 381 Mass. 284, 293, n. 13 (1980). Procedural unconscionability examines whether "the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise." *Storie v. Household Int'l, Inc.*, No. 03-40268-FDS, 2005 WL 3728718, at *9 (D. Mass. Sept. 22, 2005). Substantive unconscionability goes to whether "the terms are oppressive to one party." *Id.*

Hart has failed to allege facts sufficient for either prong of the unconscionability standard. First, Hart has failed to allege any facts suggesting that he had no meaningful choice

16

when he took the loan from Countrywide, i.e., he fails to allege the essential facts for procedural unconsionability. Hart never alleges, for instance, that he did not understand the terms of his loan, which were fully disclosed, as discussed above. Indeed, Hart does not allege any facts surrounding the circumstances under which he entered into the loan with Countrywide in December 2005, let alone any suggesting duress. *See* FAC ¶ 22. Although he alludes to the fact that he "is now working two jobs" and "is unable to make monthly mortgage payments that will amortize the loan," FAC ¶ 2, Hart makes no allegations about his financial situation at the time he entered into the loan. In any event, mere allegations of financial distress and difficulty in obtaining credit are insufficient to demonstrate that plaintiffs were unfairly induced to enter into an agreement. *See Storie*, 2005 WL 3728718, at *9 (no procedural unconsionability because plaintiff failed to allege how circumstances leading up to agreement unfairly influenced decision to enter into agreement).

Second, Hart does not allege that the terms of the loan were sufficiently "oppressive" to constitute substantive unconscionability. The heart of Plaintiff's allegations is not so much that the loan terms were themselves objectively oppressive to Hart and unreasonably favorable to Countrywide, but rather that once Hart decided to only make minimum payments, he then could not afford his later payments. *See, e.g.,* FAC ¶¶ 24, 30. This hardly satisfies the requirement that Plaintiff plead facts demonstrating the loan terms were "oppressive." *Storie*, 2005 WL 3728718 at *9.

### IV. HART HAS FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT IN COUNT V BECAUSE AN EXPRESS CONTRACT GOVERNS.

The unjust enrichment claim must be dismissed because Hart cannot, as a matter of law, recover under equitable, quasi-contractual theories where an express contract exists between the parties, as here. *York v. Zurich Scudder Investments, Inc.*, 66 Mass. App. Ct. 610, 620 (App. Ct.

17

2006) ("It is well settled that quantum meruit relief may not be granted where an express contract covering the matter exists."); *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter."). This is so because in contract claims a remedy at law exists, precluding claims for equitable relief. *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F. Supp. 683, 687 (D. Mass. 1991). Here, it is undisputed that Hart's claim is predicated on an express contract between him and Countrywide. The Court should dismiss the unjust enrichment claim because an express contract covers the loan at issue.

## V. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT IN COUNT VI.

The Declaratory Judgment count should similarly be dismissed for two reasons. First, there is no independent cause of action under the Declaratory Judgment Act. *Akins v. Penobscot Nation*, 130 F.3d 482 (1st Cir. 1997); *Johnson v. D&D Home Loans Corp.*, No. 2:07-cv-204, 2007 WL 4355278, at *4 (E.D. Va. Dec. 6, 2007) (declaratory relief is a "remedy available . . . and not a separate cause of action."). As this "claim" does not state a separate and independent ground for relief, the Court should dismiss Count VI.

Second, this Court should dismiss the declaratory relief claim because it is duplicative of Hart's other claims, and thus unnecessary. This Court has great discretion to grant or deny a request for declaratory relief. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (stating that "[d]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . ."); *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997) (courts have "broad discretion to decline to decline to enter a declaratory judgment"). Hart seeks a judicial declaration regarding the propriety of certain of Countrywide's lending practices, yet the issue of whether those practices are proper will necessarily be resolved

18

through Plaintiff's Chapter 93A claim and other claims. Accordingly, Hart's declaratory relief claim should be dismissed because it serves no useful purpose and is merely duplicative of his other claims. *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994) (when determining if declaratory relief is warranted, Court considers whether "granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest.").

## VI. DEFENDANTS "BANK OF AMERICA HOME LOANS, INC." AND COUNTRYWIDE BANK, N.A. SHOULD BE DISMISSED FROM THE CASE.

Finally, named Defendants "Bank of America Home Loans, Inc." and Countrywide Bank, N.A. ("Countrywide Bank") should be dismissed from the case for the additional reason that Hart does not allege that either had anything to do with his loan. Hart does not allege that "Bank of America Home Loans, Inc." or Countrywide Bank actually made the loan about which he complains. Neither is mentioned in any of the exhibits attached to the complaint; rather, the exhibits demonstrate that America's Wholesale Lender made the loan to Plaintiff. America's Wholesale Lender was a d/b/a of Countrywide Home Loans, Inc., and it is thus Countrywide Home Loans, Inc. that was Hart's lender. See Nuzum Decl. Ex. A, HUD-1 Settlement Statement (listing lender as Countrywide Home Loans, Inc.). "Bank of America Home Loans, Inc." is not even an actual entity. Bank of America Home Loans is a trade name used by non-party Bank of America, N.A.'s mortgage lending business. But there are no allegations in the Complaint that any Bank of America entity was involved in Plaintiff's 2005 loan. As Plaintiff has failed to plead any facts against the non-existent "Bank of America Home Loans, Inc.," or against Countrywide Bank, he cannot state a claim against either under Fed. R. Civ. P. 8(a). Therefore, those entities should be dismissed from the case.

19

## **CONCLUSION**

For all of the foregoing reasons, Countrywide respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated:  October 2, 2009

Respectfully Submitted,

COUNTRYWIDE HOME LOANS, INC.
(improperly named as Bank of America Home Loans, Inc., f/k/a Countrywide Home Loans, Inc., Countrywide Bank, N.A., d/b/a America's Wholesale Lender)

By its attorneys,

/s/ James W. McGarry
James W. McGarry (BBO No. 633726)
Elianna J. Nuzum (BBO No. 663354)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
T: 617.570.1000
F: 617.523.1231
jmcgarry@goodwinprocter.com
enuzum@goodwinprocter.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 2, 2009.

/s/ James W. McGarry